IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**IN RE:  Aleasia Michelle Mason**          CASE NO.: 14-16468 PMJ
**aka Lisa Mason**                                      Chapter 13

      **Debtor**

## MOTION FOR RELIEF FROM STAY AND CO-DEBTOR STAY AND FOR ABANDONMENT

Comes now Bank of America, N.A. ("Movant/Creditor"), by and through its attorney, Robert S. Coleman, Jr., and for its Motion for Relief from Stay and Co-Debtor Stay and Motion for Abandonment, states as follows:

1. Aleasia Michelle Mason ("Debtor") filed her Voluntary Petition for Chapter 13 bankruptcy on December 5, 2014.

2. On April 21, 2014, Debtor and Co-Debtor, Anthony Mason executed a Final Disclosure Truth-In-Lending in favor of Bank of America, N.A. in the principal sum of Ten Thousand One Hundred Ninety and 70/100 ($10,190.70). A copy of the Final Disclosure Truth-In-Lending is attached hereto as Exhibit "A" (the "Contract").

3. On October 22, 2013, Movant recorded its security interest in the Debtor's 2009 Chevy Impala, VIN# 2G1WT57K491127589, with the State of Arkansas. A copy of the Certificate of Title is attached hereto as Exhibit "B".

4. Movant/Creditor, is prohibited from protecting its interest in the subject Collateral due to the automatic stay.

5. In her plan, Debtor proposed to surrender the Collateral.

6. As of July 8, 2016, the principal balance still owed on the Collateral is $8,376.29.

7. Movant/Creditor is entitled to relief from automatic stay in that Debtor has not made payments and the loan is now due for the payments from September 25, 2015 through June 25, 2016. Monthly payments are $164.07 and the account is due for post-petition payments from September 25, 2015 to June 25, 2016 for a total of $1577.33.

8. Pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), sufficient cause exists for the terminating of the automatic stay and co-debtor stay as to Movant/Creditor, its Collateral, and the proceeds thereof. Movant/Creditor, is entitled to abandonment of the Collateral pursuant to 11 U.S.C. §554(b) in that the Collateral is of inconsequential value and benefit to the bankruptcy estate.

9. Co-Debtor, Anthony Mason, co-signed the aforesaid Final Disclosure Truth-In-Lending. The co-debtor stay should be lifted pursuant 11 U.S.C. 1301 (c)(2) because the plan filed by the debtor does not propose to pay the debt to Bank of America, N.A.

10. In the event the Co-Debtor does not file with the Court and serve upon the Movant a written objection to this motion, Movant further requests that the co-debtor stay be terminated twenty (20) days after the date of the filing of this motion pursuant to 11 U.S.C. 1301 (d).

WHEREFORE, the Movant/Creditor, prays:

1. That it be relieved from the automatic stay and co-debtor stay pursuant to 11 U.S.C. § 362 and abandonment of the collateral and waive the 14-day stay described by Bankruptcy Rule 4001 (a)(3) so that it may proceed with its regular and customary collection activities,

2. For such other and further relief to which it may be entitled.

Respectfully submitted,

Marinosci Law Group, P.C.

/s/ Robert S. Coleman, Jr.
Robert S. Coleman, Jr.
Attorney Bar No.:  91144
1405 North Pierce, Suite 306
Little Rock, AR 72207
Phone No. 501-663-6200
Fax No. 501-663-6200
rcoleman@mlg-defaultlaw.com

## CERTIFICATE OF SERVICE

I, Robert S. Coleman, Jr., certify that a true and correct copy of the foregoing was placed in the U. S. Mail with sufficient postage affixed hereto and via ECF/Electronic Mail, as to guarantee proper delivery to the following on this 3rd day of August, 2016:

| Co-Debtor's Mailing: | Trustee's Mailing: | Debtor's Attorney: |
|---|---|---|
| Anthony Mason, Debtor<br>1400 Harkrider St, Apt C30<br>Conway, AR 72032-4242 | Joyce Bradley Babin, Trustee<br>PO Box 8064<br>Little Rock, AR 72203-8064 | JAMES O. WYRE, II, Esq.<br>690 S. SALEM<br>STE. 301<br>CONWAY, AR 72034 |

U.S. Trustee's Mailing:

Office of the U.S. Trustee
200 W Capitol, Ste. 1200
Little Rock, AR 72201

Marinosci Law Group, P.C.

/s/ Robert S. Coleman, Jr.
Robert S. Coleman, Jr.

3

EXHIBIT A

**Bank of America**     FINAL DISCLOSURE TRUTH-IN-LENDING

DISCLOSURE DATE 04/24/2014

BORROWER(S)     LENDER BANK OF AMERICA, N.A.

NAME Aleasia M Mason     ADDRESS 1400 Harkrider St Apt C30 Conway, AR 72032-4242

NAME Anthony Mason     ADDRESS 1400 Harkrider St Apt C30 Conway, AR 72032-4242

NAME _____     ADDRESS _____

NAME _____     ADDRESS _____

**DESCRIPTION OF COLLATERAL:**

| New or Used | Year | Make and Model | Collateral Identification Number | Loan Purpose |
|---|---|---|---|---|
| USED | 2009 | CHEVROLET IMPALA | 2G1WT57K491127589 | [X] Personal [ ] Business |
| | | | | |
| | | | | |

**TRUTH-IN-LENDING DISCLOSURE**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.990 % | $ 1,622.34 (e) | $ 10,190.70 | $ 11,813.04 (e) |

Your payment schedule will be:     (e) means an estimate.

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | 164.07 | Monthly Beginning 05/25/2014 |

Security: You are giving us a security interest in the Collateral described above.
Late Charge: If a payment is more than 10 days late, you will be charged five percent (5%) of the unpaid portion of the scheduled payment or $50, whichever is less.
Filing Fee: $ 0.00
Prepayment Charge: If you pay off early, you will not have to pay a penalty; and will not be entitled to a refund of a part of the finance charge.

**ITEMIZATION OF AMOUNT FINANCED**

1. Amount given to me directly .................................................. $ 0.00 (1)
2. Amount paid to my Bank loan account ........................................ $ 0.00 (2)
3. Amount paid to others on my behalf ........................................... $ 10,190.70 (3)
   A. Documentary Stamp Tax............................ To: State ........................... $ 0.00
   B. Filing Fees ............................................ To: Public Officials ............... $ 0.00
   C. For: TITLE PROCESSING FEE   To: VINTEK    $ 0.00 *
   D. For: SALES TAX   To: STATE    $ 0.00 *
   E. For: PAYOFF   To: BANK OF AMERICA    $ 10,190.70 *
   F. For: _____ To: _____ $ _____ *
   G. For: _____ To: _____ $ _____ *
   H. For: _____ To: _____ $ _____ *
   I. For: _____ To: _____ $ _____ *
   J. For: _____ To: _____ $ _____ *
   K. For: _____ To: _____ $ _____ *

4. Prepaid Finance Charge ........................................................ $ 0.00 (4)
5. Principal Amount (1, 2, 3, and 4) ............................................. $ 10,190.70 (5)
6. Total Amount Financed (5 minus 4) .......................................... $ 10,190.70 (6)

*We may share in or receive a portion of these amounts.

**This document constitutes the Final Truth-in-Lending Disclosure for the Promise to Pay Agreement which includes the Security Agreement and Terms and Conditions that the Borrower has already endorsed.**

GA DD FINAL DISCLOSURE
10-06-2429 NSBW (7-05)
AU112A

Page 1 of 1

DATE PRINTED: 04/24/2014



 **Bank of America**    ESTIMATED DISCLOSURE, SECURITY AGREEMENT AND TERMS AND CONDITIONS

BORROWER(S)      LENDER __BANK OF AMERICA, N.A.__

NAME __Aleasia M Mason__      ADDRESS __1400 HARKRIDER ST APT C30, Conway, AR 72032-4242__

NAME __Anthony Mason__      ADDRESS _____

NAME _____      ADDRESS _____

NAME _____      ADDRESS _____

**DESCRIPTION OF COLLATERAL:**

| New or Used | Year | Make and Model | Collateral Identification Number | Loan Purpose |
|---|---|---|---|---|
| Used | 2009 | CHEVROLET IMPALA | 2G1WT57K491127589 | ● Personal  ○ Business |
|  |  |  |  |  |

### TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.990 % | $ 1,658.28 (e) | $ 10,413.96 | $ 12,072.24 (e) |

Your payment schedule will be:

(e) means an estimate.

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $167.67 | Monthly Beginning May 15, 2014 |

**Security:** You are giving us a security interest in the Collateral described above.
**Late Charge:** If a payment is more than 10 days late, you will be charged five percent (5%) of the unpaid portion of the scheduled payment or $50, whichever is less.
**Filing Fee:** $ __0.00__
**Prepayment Charge:** If you pay off early, you will not have to pay a penalty; and will not be entitled to a refund of a part of the finance charge. See your contract documents for any additional information about nonpayment, default, any required prepayment in full before the scheduled date and prepayment penalties.

### ITEMIZATION OF AMOUNT FINANCED

1. Amount given to me directly ............................................................................................. $ __10,413.96__ (1)
2. Amount paid to my Bank loan account ............................................................................ $ _____ (2)
3. Amount paid to others on my behalf ................................................................................ $ _____ (3)
  A. Documentary Stamp Tax     To: State .................................... $ __0.00__
  B. Filing Fees .................................... To: Public Officials ...................... $ __0.00__
  C. For __Sales Tax__     To: __State__    $ __0.00__ *
  D. For __Title Processing Fee__     To: __VINtek__    $ __0.00__ *
  E. For _____ To: _____ $ _____ *
  F. For _____ To: _____ $ _____ *
  G. For _____ To: _____ $ _____ *
  H. For _____ To: _____ $ _____ *
  I. For _____ To: _____ $ _____ *
  J. For _____ To: _____ $ _____ *
4. Prepaid Finance Charge .................................................................................................. $ __0.00__ (4)
5. Principal Amount (1, 2, 3, and 4) .................................................................................... $ __10,413.96__ (5)
6. Total Amount Financed (5 minus 4) ................................................................................ $ __10,413.96__ (6)

* We may share in or receive a portion of these amounts.

GADD Initial Disclosure
10-06-2428 NSBW (5-07)      Page 1 of 3

continued from Page 1

**CREDIT INSURANCE DISCLOSURE: YOU ARE REQUESTING CREDIT INSURANCE INDICATED HEREIN. YOU AGREE THAT IT IS NOT REQUIRED AS A CONDITION OF THIS LOAN.** Please review the information provided by the insurer for more detail concerning the terms and conditions. Please check the appropriate box(es) and sign below if you wish to purchase insurance:

☐ Single Credit Life Insurance (Borrower only)   ☐ Credit Disability Insurance (Borrower only)
☐ Joint Credit Life Insurance                    ☐ Other: _____

Insurer(s): _____
Address: _____
Credit Life:       Term: _____  Premium $ _____   Joint Credit Life: Term: _____ Premium $ _____
Credit Disability: Term: _____  Premium $ _____   Other: _____ Term: _____ Premium $ _____

**OPTIONAL GUARANTEED AUTO PROTECTION DISCLOSURE: YOU ARE REQUESTING GAP COVERAGE INDICATED HEREIN. YOU AGREE THAT IT IS NOT REQUIRED AS A CONDITION OF THIS LOAN AND THAT YOU MAY PURCHASE IT FROM ANY COMPANY YOU WANT WHICH IS AUTHORIZED TO SELL SUCH COVERAGE AND IS ACCEPTABLE TO US.** If you wish to purchase Gap coverage under this Agreement and you agree to pay the additional cost for the coverage, please sign below.
I request Gap coverage and agree to pay the additional cost of $ _____
The Gap company is _____ at _____
                     Name of company                        Office Address

X_____ / /   X_____ / /
      Borrower          Date           Borrower          Date

X_____ / /   X_____ / /
      Borrower          Date           Borrower          Date

**PROPERTY INSURANCE:** You understand that you are required to purchase property insurance on the Collateral. You can buy this insurance through any person of your choosing acceptable to us (please see next page for what could happen if you do not maintain such insurance.)

**PROMISE TO PAY:** You promise to pay to the order of Bank of America, N.A., the Principal Amount plus interest at the Contract Rate of __4.99000__ %. The Principal Amount, and payment schedule disclosed on this Agreement may change based on the date the loan is funded, the final loan terms and the final amount financed. You agree to make regular monthly payments in accordance with the payment schedule reflected on your Final Truth in Lending Disclosure continuing until your loan is paid in full. You may prepay all or any part of the unpaid Principal Amount without paying any penalty. If you prepay, we will not refund to you any portion of the finance charge. If we have not received the full amount of any payment you promise to pay the late charge as disclosed. If any payment under this Agreement is made with a check or other instrument that is dishonored for any reason, you agree to pay us a returned check fee of thirty dollars ($30) in addition to any other amounts or charges you may owe us. Interest will be charged on a daily basis of 1/365 (1/366 in a leap year) beginning on the date all title requirements have been met and funding occurs for the purchase or refinance of the Collateral previously described and continuing until the full amount of the Principal Amount has been paid. This means the amount of interest you pay will be less if you make your payments early and more if you pay late.

**TERMS AND CONDITIONS.** Please see additional pages for Terms and Conditions section. You are bound by these Terms and Conditions.
**SIGNATURE.** By signing below, you agree to all of the terms of this Agreement and request us to issue the loan. You acknowledge receiving a copy of this Agreement.

**NOTICE TO COSIGNER.** You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs which increases this amount. The Bank can collect this debt from you without first trying to collect from the borrower. The Bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

**NOTICE TO CONSUMER. (1) Do not sign this Agreement before you read it; (2) You are entitled to a copy of this Agreement; (3) You may, at any time, prepay the unpaid balance of this Agreement.**

Signature _Aleasia Mason_   4/12/14    Signature _Anthony Mason_   4/12/14
                            Date                                   Date
Name of Borrower  Aleasia M Mason         Name of Borrower  Anthony Mason

Signature _____   / /         Signature _____   / /
                           Date                                    Date
Name of Borrower _____         Name of Borrower _____

## TERMS AND CONDITIONS

**Definition.** "You" or "your" means each borrower and each other person or entity who agrees to pay this Note and therefore agrees to the terms of the Note. "We" or "us" means the Lender and its successors and assigns.

The terms, "Contract," "Agreement," and "Loan" are used interchangeably.

**Applicable Law.** This Agreement is governed by the laws of the United States and the state of Georgia.

**Ownership and Risk of Loss.** You agree to pay us all that you owe under this Agreement even if the Collateral is damaged.

**Security Interest.** You have provided us a security interest in the Collateral that you have purchased or refinanced with the proceeds of this Note you have executed. You agree to allow us to inspect the Collateral at any reasonable time and provide any additional documentation and sign other documents, including financing statements, certificates of title or other documentation required to perfect our security interest in the Collateral. You will also pay all costs in connection with filing any such documentation. You represent that there are no other security interests or liens on the Collateral other than ours and will permit no other liens without our prior written consent.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Collateral for the term of this Agreement. At any time during the term of this Agreement, if you do not have physical damage insurance which covers both interests in the Collateral, we may, if we decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if we desire. If we buy either of these coverages, we will let you know what type it is and the charge you must pay. We may either request immediate reimbursement from you for the cost of such insurance or may add the insurance premium to the unpaid principal amount on this Agreement. If the insurance premium is added to the unpaid principal amount of this Agreement, interest will be charged on the insurance premium at the Annual Percentage Rate disclosed in this Agreement, and you agree to pay the insurance premium with the interest in equal installments along with the payments shown on the payment schedule.

You understand and agree that if we or our assignee purchase any physical damage insurance, we will be acting in our own interest and will not be representing your interest. You further understand and agree that the purchased insurance will not contain any liability coverages, may cover only our interest in the Collateral, may have deductible amounts different than those in any of your provided insurance, and may be more expensive than equivalent insurance which you could purchase through your own sources. You agree that we can purchase such insurance with coverage that will be retroactive to the date your insurance terminated. You understand and agree that we may receive compensation or reimbursement in connection with such insurance.

If the Collateral is lost or damaged, you agree that we can use any insurance settlement either to repair the Collateral or to apply to your debt.

**Insurance or Service/Repair Plan Charges Returned to Us.** If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance which covers only our interest in the Collateral.

Any refund on optional insurance or service/repair plan obtained by us will be credited to your account.

Credits to your account will be in the same manner as payments. You will be notified of what is done.

**Repossession of the Collateral for Failure to Pay.** If you fail to pay according to the payment schedule or if you break any of the agreements in this Agreement (default), we can take the Collateral from you (repossession) subject to any right to cure default you may have. To take the Collateral, we can go on your land or anywhere the Collateral is located so long as it is done peacefully. If there are any personal belongings in the Collateral such as clothing, furniture, and tools, we may store the items. However, we do not have to store them and will not be responsible for the items beyond what the law may require. Any accessories, equipment or replacement parts will remain with the Collateral.

**Getting the Collateral Back After Repossession.** If we repossess the Collateral, we will send to you a notice of sale disclosing that you have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, you may have the right to reinstate the account by paying past due payments plus any late charges, the cost of taking and storing the Collateral and other expenses that we have or our assignee has had. We will use the net proceeds of the sale to pay all or part of your debt.

If you owe less than the net proceeds of sale, we will pay you the difference, unless we are required to pay it to someone else. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the Collateral.

If you owe more than the net proceeds of sale, you will pay us the difference between the net proceeds of the sale and what you owe when we ask for it. If you do not pay this amount when asked, we will charge interest on it.

If you have wrongfully damaged the Collateral, you will be liable to us for the damages.

**Attorneys Fees.** To the extent permitted by applicable law, if we hire an attorney other than our salaried employee to collect what you owe, you agree to pay our reasonable attorney's fees, including any incurred in connection with any bankruptcy or appellate proceeding, and any court costs and out of pocket expenses, whether or not the suit is filed, plus interest on such sums at the highest rate allowed by law.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A) you fail to perform any obligation that you have undertaken in this Contract.
B) you provide us false or misleading information in connection with this loan.
C) you die or are declared incompetent.
D) you fail to pay or keep any other promise or any other loan you may have with us.
E) the Collateral is damaged or destroyed.

**Failure to Pay or Keep Promises as Required.** If you do not pay us as agreed or you are otherwise in default or if an event occurs which substantially reduces the value of the Collateral which materially impairs your prospects to pay amounts due under this Agreement, we may, at our option, declare the entire unpaid principal amount to be immediately due and owing. You will, following such event, at our request, deliver the Collateral to a place we designate which is reasonably convenient to both you and us.

**Credit Reporting.** You agree that we may request a consumer credit report in connection with your application and in connection with an update, renewal, or extension of the credit for which the application is made.

**Integration and Severability.** This agreement contains the entire agreement between you and us. If any part of this agreement is invalid, all other parts of the agreement will remain valid.

**Non-Waiver.** You agree not to send us partial payments marked "paid in full", "with prejudice", "without recourse" or any similar restrictive endorsements. If you send these items or complaints to our lockbox or address specified for payment, they shall not be deemed received and the endorsements will not be effective against us even though we cashed the checks on which such endorsements are contained.

**Broker Program.** If your loan is part of a broker program your financing is being obtained through the clerical assistance of the Broker; and you are to receive the credit application, promissory note and other documentation for this loan from the Broker or an authorized Broker dealer, and those documents are to be completed and executed in the presence of the Broker or an authorized Broker dealer.

**Notice of Limited Agency.** The dealer has no authority to approve or to make this loan. The dealer is not our agent in connection with the sale of the Collateral you are purchasing with the proceeds of this loan. The dealer is only authorized to prepare the loan documents and to obtain your signatures.

**Customer Identification Program (CIP).** Pursuant to requirements of law, including the USA PATRIOT Act, Bank of America is obtaining information and will take necessary actions to verify your identity.



# Bank of America

## NOTICE TO PROVIDE FIRST SECURITY INTEREST

NAME: Aleasia M Mason

NAME: Anthony Mason

NAME: _____

**DESCRIPTION OF COLLATERAL:**

| New or Used | Year | Make and Model | Collateral Identification Number |
|---|---|---|---|
| Used | 2009 | CHEVROLET   IMPALA | 2G1WT57K491127589 |

You have provided Bank of America, N.A. (The "Bank") a security interest in the Collateral that you have purchased or refinanced as listed above. You promise to provide to the Bank a properly perfected title showing the Bank as first and only lienholder with the following lienholder information:

Bank of America, N.A.
P. O. Box 2759
Jacksonville, FL 32203-2759

You further promise to provide said title with registered owner(s) as listed above and without adding any other owners to the title and agree to provide any additional documentation and sign other documents, including certificates of title or other documentation required to perfect our security interests in the Collateral.

You will also pay all costs in connection with filing any such documentation. You represent that there are no other security interests or liens on the Collateral other than ours and will permit no other liens without our written consent.

_Aleasia Mason_ 4/4/14        _Anthony Mason_ 4/4/14
Signature                Date           Signature                Date

Aleasia M Mason                         Anthony Mason
Name of Borrower                        Name of Borrower


_____  _____
Signature               Date

Name of Borrower

# CERTIFICATE OF TITLE

## STATE OF ARKANSAS

| VEHICLE IDENTIFICATION NUMBER 2G1WT57K491127589 | YEAR 2009 | MAKE CHEV | MODEL IMP | BODY TYPE 4D |
|---|---|---|---|---|
| TITLE NUMBER [redacted] | PREVIOUS TITLE NUMBER [redacted] | PREV. TITLE STATE AR | ISSUE DATE 10/22/2013 | ODOMETER 98811 | UNLADEN WEIGHT 3389 |

MAILING ADDRESS

**EXHIBIT B**

REMARKS
OD ACTUAL

BANK OF AMERICA
PO BOX 2759
JACKSONVILLE, FL 32203

OWNER

MASON, ALEASIA
1400 HARKRIDER ST APT C30
CONWAY, AR 72032

OWNER'S SIGNATURE (IF JOINT OWNERSHIP, BOTH MUST SIGN)
THIS TITLE MUST BE SIGNED UPON RECEIPT BY OWNERS

FIRST LIENHOLDER
BANK OF AMERICA
PO BOX 2759
JACKSONVILLE, FL 32203
DATE OF LIEN: 8/21/2013

FIRST RELEASE
INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED:
Name
Title        Date

The Department of Finance and Administration, State of Arkansas, hereby certifies that the applicant named hereon is duly registered as the owner of the vehicle described above. From the statements of the owner and the records on file with this department the hereon described vehicle is subject to the liens enumerated hereon.

In Witness Whereof, I have affixed my hand and seal.

*Timothy J. Leathers*
COMMISSIONER OF REVENUE

**VOID IF ALTERED**

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and or imprisonment.

## Title Assignment by Owner(s)

**TITLE ASSIGNMENT BY OWNER AND ODOMETER DISCLOSURE**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address.

I certify that to the best of my knowledge that the odometer reading provided in the box below is the actual mileage of the vehicle unless one of the following statements is checked:

Buyer(s) Printed Name _____

Buyer(s) Printed Address _____

Odometer Reading (no tenths) [____]

☐ EXCEEDS MECHANICAL LIMITS. The mileage stated is in excess of the odometer's mechanical limits.

☐ WARNING – ODOMETER DISCREPANCY. The odometer is not the actual mileage.

with warranty to be free of all encumbrances except as follows:

LIEN IN FAVOR OF _____

Address _____

DESCRIPTION OF VEHICLE TRADED IN (IF ANY)
VEHICLE IDENTIFICATION NUMBER _____

YEAR _____ MAKE _____ MODEL _____

Note to Seller. A copy of this title assignment, fully completed, is sufficient to use to claim a sales tax credit toward the purchase of another vehicle.

**BILL OF SALE** Date of Sale _____

Full Sales Price of this Vehicle $ _____

Less Trade In $ _____

Net Taxable Trade Difference $ _____

Seller(s) Printed Name _____

Seller(s) Printed Address _____

Seller(s) Signature _____

"I am aware of the above odometer certification made by the seller"

Buyer's Printed Name _____

Buyer's Signature _____

## First Dealer Reassignment

**TITLE ASSIGNMENT BY DEALER AND ODOMETER DISCLOSURE**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address.

I certify that to the best of my knowledge that the odometer reading provided in the box below is the actual mileage of the vehicle unless one of the following statements is checked:

Buyer(s) Printed Name _____

Buyer(s) Printed Address _____

Odometer Reading (no tenths) [____]

☐ EXCEEDS MECHANICAL LIMITS. The mileage stated is in excess of the odometer's mechanical limits.

☐ WARNING – ODOMETER DISCREPANCY. The odometer is not the actual mileage.

with warranty to be free of all encumbrances except as follows:

LIEN IN FAVOR OF _____

Address _____

DESCRIPTION OF VEHICLE TRADED IN (IF ANY)
VEHICLE IDENTIFICATION NUMBER _____

YEAR _____ MAKE _____ MODEL _____

**BILL OF SALE** Date of Sale _____

Full Sales Price of this Vehicle $ _____

Less Trade In $ _____

Net Taxable Trade Difference $ _____

Dealer's Printed Name _____

Dealer's License Number _____

Dealer's Signature _____

"I am aware of the above odometer certification made by the dealer"

Buyer's Printed Name _____

Buyer's Signature _____

## Second Dealer Reassignment

**TITLE ASSIGNMENT BY DEALER AND ODOMETER DISCLOSURE**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address.

I certify that to the best of my knowledge that the odometer reading provided in the box below is the actual mileage of the vehicle unless one of the following statements is checked:

Buyer(s) Printed Name _____

Buyer(s) Printed Address _____

Odometer Reading (no tenths) [____]

☐ EXCEEDS MECHANICAL LIMITS. The mileage stated is in excess of the odometer's mechanical limits.

☐ WARNING – ODOMETER DISCREPANCY. The odometer is not the actual mileage.

with warranty to be free of all encumbrances except as follows:

LIEN IN FAVOR OF _____

Address _____

DESCRIPTION OF VEHICLE TRADED IN (IF ANY)
VEHICLE IDENTIFICATION NUMBER _____

YEAR _____ MAKE _____ MODEL _____

**BILL OF SALE** Date of Sale _____

Full Sales Price of this Vehicle $ _____

Less Trade In $ _____

Net Taxable Trade Difference $ _____

Dealer's Printed Name _____

Dealer's License Number _____

Dealer's Signature _____

"I am aware of the above odometer certification made by the dealer"

Buyer's Printed Name _____

Buyer's Signature _____